UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

MIGUEL A. PORTU., an individual,

    Plaintiff,

vs.

REXEL USA, INC., a Delaware Corporation,

    Defendant.
_____/

# COMPLAINT

1.    Plaintiff, MIGUEL A. PORTU (referred to as "Plaintiff" and "PORTU"), was an employee of Defendant, REXEL USA, INC., a Delaware Corporation, Plaintiff and brings this action against REXEL USA, INC. for alleged interference and retaliation violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq*.

2.    At all times material to this action, PORTU has been an individual residing in Miami-Dade County, Florida, within the jurisdiction of this Court.

3.    At all times material to this action, Defendant, REXEL USA, INC., has owned and operated an electrical distribution business at numerous locations including at 6767 NE 4th Avenue, Miami, Florida 33138 in Miami-Dade County, within the jurisdiction of this Court.

4.    Jurisdiction is conferred on this Court by 28 U.S.C. §1337 and 29 U.S.C. §2601.

5.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this action occurred in Miami-Dade County, within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

6. In or around July 2017 PORTU began working for REXEL USA, INC. as Assistant Branch Manager based in Miami, Florida.

7. In or around early 2017, REXEL USA, INC. acquired RAULAND-BORG CORPORATION.

8. Between approximately July 2017 and August 2021, PORTU's primary duties as Assistant Branch Manager for REXEL USA, INC. consisted of, *inter alia*: labor; daily operations; and logistics work for Defendant's electrical distribution.

9. Between approximately July 2017 and August 2021, PORTU satisfactorily performed his duties as Assistant Branch Manager for REXEL USA, INC.

10. During the calendar year 2020, REXEL USA, INC. paid PORTU gross wages in the amount of $80,260.40 as a full-time employee.

11. During the calendar year 2021, REXEL USA, INC. paid PORTU more than approximately $50,000.00 in gross wages as a full-time employee.

12. In or around October 2020, PORTU injured his right knee in the course and scope of his employment with REXEL USA, INC. while Plaintiff was working at Defendant's hub in Orlando located at 7445 Southland Boulevard, Orlando, Florida 32809.

13. Notably, Melissa Fordham, REXEL USA, INC.'s Florida Director of Operations who was based in Orlando, later observed PORTU limping.

14. Similarly, while PORTU was at the hotel in Orlando in approximately October 2020 after Plaintiff injured his knee while working for REXEL USA, INC., PORTU informed supervisor Eddie Concepcion, REXEL USA, INC.'s Miami Branch Manager, that PORTU had injured his right knee.

15. Despite the fact that management personnel of REXEL USA, INC. had knowledge since approximately October 2020 that PORTU had suffered an on-the-job injury while working for Defendant, including but not necessarily limited to, Melissa Fordham and Eddie Concepcion, REXEL USA, INC. failed to report PORTU's workplace injury in October 202 to Defendant's Workers' Compensation carrier and REXEL USA, INC. likewise <u>did not</u> file in October 2020 a "First Report of Injury or Illness" form for the Florida Department of Financial Services Division of Workers' Compensation as required by Florida law.

16. In or around December 2020, PORTU's right knee was examined by Dr. Joseph Fernandez, and through the course of subsequent testing and evaluation between approximately December 2020 and March 2021 for which PORTU had to attend doctors' appointments, it was determined that Plaintiff suffered a serious knee injury which required surgery.

17. On April 1, 2021, PORTU underwent surgery to repair a torn meniscus in Plaintiff's right knee and was absent from work for approximately three (3) days.

18. As a result of medical treatment for PORTU's knee injury, Plaintiff has spent thousands of dollars in out-of-pocket payments for medical treatment that should have been paid by REXEL USA, INC.'s Workers' Compensation insurance carrier.

19. PORTU was eligible for and entitled to FMLA leave in 2020 and 2021 from his employment with REXEL USA, INC. pursuant to the Family and Medical Leave Act, 29 U.S.C. §2612(a)(1)(C), in connection with Plaintiff's serious health condition(s) as a result of Plaintiff's knee injury.

20. At all times material to this Complaint, REXEL USA, INC. was engaged in an industry affecting commerce and had Fifty (50) or more employees for each working day in each of twenty (20) or more weeks of 2020 and/or or 2021, such that REXEL USA, INC. constitutes

an employer within the meaning of the FMLA, 29 U.S.C. §2611(4), §2612, §2614(a), §2615(a)(1), and §2617(a).

21.     PORTU worked more than 1,250 hours for REXEL USA, INC. during the twelve (12) month period leading up to October 2020, such that PORTU was, at all times material to this action, an eligible employee under the FMLA, 29 U.S.C. §2611(2), §2612, §2614(a), §2615(a)(1), and §2617(a).

22.     PORTU was eligible for and entitled to medical leave under the Family and Medical Leave Act between approximately October 2020 and August 2021 pursuant to 29 U.S.C. §2612(a)(1)(D) because of a serious health condition that made Plaintiff unable to perform the functions of his position as Assistant Branch Manager for three (3) or more days, and PORTU's knee injury and related medical condition(s) constitute one or more "serious health conditions" within the meaning of the FMLA, 29 U.S.C. §2612(a)(1)(D).

23.     Between approximately October 2020 and August 2021, PORTU exercised his right to seek medical leave from his employment with REXEL USA, INC. under the Family and Medical Leave Act, 29 U.S.C. §2612(a)(1)(C), in connection with Plaintiff's serious health condition(s).

24.     Between approximately October 2020 and August 2021, PORTU had numerous communications with management personnel of REXEL USA, INC. about Plaintiff's serious health condition(s) and PORTU's workplace injury to his right knee.

25.     When REXEL USA, INC. learned beginning in October 2020 of PORTU's right knee injury and the reasons for Plaintiff's need to take time off from work for Plaintiff's serious health condition(s) on multiple days between approximately October 2020 and August 2021, REXEL USA, INC. had sufficient information for Defendant to understand that PORTU needed

and/or was entitled to leave for FMLA-qualifying reasons in accordance with the FMLA, 29 C.F.R. §825.302.

26. However, although REXEL USA, INC. was aware in October 2020 of the facts and circumstances surrounding PORTU's need for medical leave for FMLA-qualifying reasons—or at a minimum, that Plaintiff's need for time off "may be for" an FMLA-qualifying reason because of Plaintiff's knee injury—Defendant failed to notify PORTU of his eligibility for this time off to be FMLA-protected leave, as required by the FMLA, 29 C.F.R. §825.300(b)(1), as a result of which REXEL USA, INC. interfered with PORTU's right to FMLA-protected leave between approximately October 2020 and August 2021.

27. Further despite REXEL USA, INC.'s management having knowledge of the facts and circumstances of PORTU's knee injury in October 2020 and the reasons for Plaintiff's medical absences from his employment with Defendant on multiple days between approximately October 2020 and April 2021—including specifically to obtain medical treatment for Plaintiff's serious health condition(s) as a result of his knee injury—REXEL USA, INC. never provided PORTU with notice of his rights under the FMLA—such as, for example, Plaintiff's right to take up to twelve (12) weeks of protected leave from his employment for his serious health condition(s) as a result of his knee injury—and Defendant failed to comply with its obligations as an employer on the FMLA with respect to Plaintiff's entitlement to intermittent and/or other medical leave under the FMLA for Plaintiff's serious health condition(s).

28. Instead, in approximately April 2021, Eddie Concepcion told PORTU that Plaintiff needed to return to work because of Jacqueline (a/k/a Jackie) Faulk, REXEL USA, INC.'s Regional President, asking why PORTU had an automated e-mail reply which reflected that Plaintiff was out for "medical leave."

29. Significantly, PORTU did not obtain enough time off in April 2021 for his knee injury in order to sufficiently recover after having surgery, and as a result, Plaintiff had to request a motorized scooter be brought from REXEL USA, INC.'s Orlando branch to the Miami branch in order for Plaintiff to be able to work while dealing with the pain associated with his knee injury.

30. Likewise, in or around April 2021, Michelle Devine, a corporate Human Resources employee of REXEL USA, INC., saw PORTU on crutches during a Zoom video meeting and Devine asked what had happened to Portu.

31. In response to Michelle Devine's questions in approximately April 2021, PORTU explained to Devine that Plaintiff had previously injured his knee while working for REXEL USA, INC., at which point Devine stated that PORTU's injury had to go through Defendant's Workers' Compensation insurance and should have been reported by REXEL USA, INC. as a workplace injury.

32. Based upon information and belief, REXEL USA, INC. did not submit a "First Report of Injury or Illness" form until April 16, 2021 for PORTU's workplace injury to Plaintiff's right knee.

33. Significantly, Melissa Fordham, REXEL USA, INC.'s Florida Director of Operations, had never reported PORTU's injury to Defendant's Workers' Compensation insurance carrier, but when Devine and/or Workers' Compensation contacted Fordham in approximately April 2021 about PORTU actually having been injured in the course of his employment with REXEL USA, INC., it is PORTU's understanding that Fordham tried to deny that she previously had knowledge that PORTU had injured his knee at work.

34. Further, when PORTU subsequently communicated with Melissa Fordham in approximately April 2021, Fordham was mad that PORTU had divulged to Michelle Devine that Fordham knew about PORTU's workplace injury approximately six (6) months earlier but never reported it through Workers' Compensation and Fordham got angry with PORTU, with Fordham telling PORTU that he was jeopardizing Fordham's employment with REXEL USA, INC. because, according to Fordham, PORTU and other employees had been doing work in the Orlando hub that they were supposed to be performing since it was already subcontracted by REXEL USA, INC. to another company to do that type of work.

35. Moreover, Fordham went even further in approximately April 2021 when Fordham told PORTU to lie and to deny to Workers' Compensation that PORTU was hurt at work, as part of which Fordham told PORTU the name of the Workers Compensation Claims Adjuster before the Adjuster ever contacted PORTU in order for PORTU to falsely document that he was not pursuing any Workers' Compensation treatment or benefits and rather was going through Plaintiff's health insurance plan.

36. On or around August 20, 2021, REXEL USA, INC. terminated PORTU's employment for the purported reason that Plaintiff allegedly engaged in and/or participated in harassment of another employee, Jorge Padilla.

37. The reason(s) proffered by REXEL USA, INC. in August 2021 for terminating PORTU's employment were false and known to be false by Defendant at the time of Plaintiff's termination and instead were a pretext for unlawful disparate treatment and retaliation against Plaintiff because PORTU took time off work for his serious health condition(s) and/or triggered the protections of the Family and Medical Leave Act.

38. A motivating factor behind REXEL USA, INC.'s decision to terminate PORTU's employment in August 2021 was retaliation against PORTU because Plaintiff: (a) requested and/or took time off from work on one or more occasions between approximately October 2020 and August 2021 for FMLA-qualifying reasons; and (b) Defendant's knowledge that PORTU took time off work for his serious health condition(s) and/or triggered the protections of the FMLA, including the benefits and protections associated with intermittent leave and job reinstatement guaranteed by the FMLA.

39. When REXEL USA, INC. terminated PORTU's employment in August 2021, Defendant unlawfully (a) interfered with Plaintiff's rights under the FMLA; and/or (b) retaliated against PORTU because Plaintiff took time off work for his serious health condition(s) and/or triggered the protections of the FMLA.

## COUNT I
## INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, MIGUEL A. PORTU, reasserts and reaffirms the allegations of Paragraphs 1 through 39 and further states that this is an action against REXEL USA, INC. for Interference in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

40. The FMLA, 29 U.S.C. §2615(a)(1), provides that it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under 29 U.S.C. §2611, *et seq*.

41. Under the FMLA, when the timing of an employee's need for FMLA leave is not foreseeable, an employee is only required provide notice to his employer "as soon as practicable under the facts and circumstances of the particular case." 29 CFR §825.303(a).

42. Similarly, where an emergency condition requires leave because of an FMLA-qualifying reason, written advance notice pursuant to an employer's standard rules and procedures is not required when medical leave is involved.  29 CFR §825.303(c).

43. PORTU provided REXEL USA, INC. beginning in or around October 20201 with sufficient facts and notice of his need for intermittent or other medical leave for his serious health condition(s) as a result of Plaintiff's right knee injury.

44. On multiple occasions during his employment with REXEL USA, INC. between approximately October 2020 and August 2021, PORTU exercised, and/or attempted to exercise, rights guaranteed under and protected by the FMLA, 29 U.S.C. §§2612(a)(1)(D).

45. PORTU's right knee injury and related medical conditions constitute one or more "serious health conditions" within the meaning of the FMLA, 29 U.S.C. §2612(a)(1)(D).

46. By exercising and/or attempting to exercise his rights under the FMLA on multiple occasions during his employment with REXEL USA, INC. between approximately October 2020 and August 2021, including but not necessarily limited to PORTU's right to intermittent or other leave under the FMLA, PORTU engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq.*, triggering the protections of the FMLA, specifically including but not limited to PORTU's rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave to care for his "serious health condition"; and (b) 29 U.S.C. §2614 to be restored to Plaintiff's position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon his return from leave.

47. REXEL USA, INC. interfered with PORTU's right to take leave under the FMLA to care for his serious health condition between approximately October 2020 and August 2021

when Defendant had knowledge of PORTU's exercise and/or attempted exercise of rights guaranteed under and protected by the FMLA, in violation of 29 U.S.C. §2615(a)(1).

48. On or around August 20, 2021, REXEL USA, INC. interfered with PORTU's rights under the FMLA when Defendant terminated PORTU's employment in violation of 29 U.S.C. §2612(a)(1)(C) for a reason which was a pretext for discrimination against Plaintiff in violation of his FMLA rights and at a point when PORTU had not exhausted twelve (12) workweeks of leave which PORTU was entitled to under the FMLA his "serious health condition(s)."

49. As a result of REXEL USA, INC.'s violations of PORTU's rights protected by the FMLA, Plaintiff has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

50. REXEL USA, INC. violations of the FMLA were willful, intentional, and not done in good faith.

51. Pursuant to 29 U.S.C. §2617(a)(1)(iii), PORTU is entitled to an award of liquidated damages from REXEL USA, INC. equal to the sum of the amount of all salary, wages, bonuses, employment benefits, and other compensation denied to or lost by PORTU by reason of Defendant's violations of 29 U.S.C. §2615(a)(1).

52. Pursuant to 29 U.S.C. §2617(a)(3), PORTU is entitled to all reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action to be paid by REXEL USA, INC.

WHEREFORE, Plaintiff, MIGUEL A. PORTU, demands judgment against Defendant, REXEL USA, INC., for back pay, employment benefits, other compensation including bonuses,

liquidated damages, equitable relief including but not limited to front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, MIGUEL A. PORTU, reasserts and reaffirms the allegations of Paragraphs 1 through 39 and further states that this is an action against REXEL USA, INC. for Retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

53. The FMLA, 29 U.S.C. §2601 *et seq.*, prohibits an employer from retaliating against an eligible employee who has (a) obtained and/or attempted to obtain the benefits and protections of the FMLA; or (b) otherwise triggered the protections of, or engaged in activity protected by, the FMLA.

54. Under 29 U.S.C. §2615, the FMLA also prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the Act.

55. On multiple occasions during his employment with Defendant between approximately October 2020 and August 2021, PORTU exercised, and/or attempted to exercise, his rights under the FMLA in accordance with 29 U.S.C. §§2612(a)(1)(C).

56. By exercising and/or attempting to exercise his rights under the FMLA on multiple occasions during his employment with Defendant between approximately October 2020 and August 2021, including but not necessarily limited to PORTU's right to intermittent or other leave under the FMLA for his "serious health condition(s)," PORTU engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq.*, triggering the protections of the FMLA, specifically including but not limited to PORTU's rights pursuant to: (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave on an intermittent basis to care for his "serious health

condition(s)"; and (b) 29 U.S.C. §2614 to be restored to Plaintiff's position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon his return from leave.

57. Not only did members of REXEL USA, INC.'s management receive notice about and have knowledge beginning in approximately October 2020 of PORTU's need for FMLA for his "serious health condition(s)," but one or more of Defendant's managers seemed to question the seriousness and/or legitimacy of Plaintiff's knee injury between approximately October 2020 and August 2021.

58. REXEL USA, INC. was fully aware and/or should have been aware beginning in or around October 2020 of Defendant's legal obligations as an employer covered by the FMLA.

59. At all times material to this action, PORTU satisfactorily performed his essential job duties as Assistant Branch Manager for REXEL USA, INC.

60. On or around August 20, 2021, Defendant retaliated against PORTU and unlawfully terminated Plaintiff's employment in violation of 29 U.S.C. §2615(a)(1) when Defendant fired PORTU for a reason which was a pretext for discrimination against Plaintiff in violation of his FMLA rights and instead was actually because of Plaintiff's exercise of his rights to leave under the FMLA.

61. A motivating factor behind REXEL USA, INC.'s decision to terminate PORTU's employment in August 2021 was retaliation against PORTU because Plaintiff: (a) requested time off from work on one or more occasions between approximately October 2020 and August 2021 for FMLA-qualifying reasons; and (b) Defendant's knowledge that PORTU sought and/or triggered the protections of the FMLA, including the benefits and protections associated with

intermittent or other leave and job reinstatement guaranteed by the FMLA, all in violation of 29 U.S.C. §2615(a)(1).

62. REXEL USA, INC. did not have a legitimate, non-discriminatory business reason to terminate PORTU's employment in August 2021 and instead terminated Plaintiff in a pretextual attempt to cover Defendant's discrimination against Plaintiff in violation of his FMLA rights and Defendant's intentional violations of PORTU's rights under the FMLA.

63. By subjecting PORTU to retaliation and terminating PORTU's employment in August 2021 because Plaintiff exercised and/or attempted to exercise his rights under the FMLA, as guaranteed by, *inter alia*, 29 U.S.C. §2612(a)(1)(C), REXEL USA, INC. intentionally retaliated against PORTU in violation of the FMLA.

64. As a result of REXEL USA, INC.'s violations of PORTU's rights protected by the FMLA, Plaintiff has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

65. REXEL USA, INC.'s violations of the FMLA were willful, intentional, and not done in good faith.

66. Pursuant to 29 U.S.C. §2617(a)(1)(iii), PORTU is entitled to an award of liquidated damages from REXEL USA, INC. equal to the sum of the amount of all wages, employment benefits, and other compensation denied to or lost by Plaintiff by reason of Defendant's violations of 29 U.S.C. §2615(a)(1).

67. Pursuant to 29 U.S.C. §2617(a)(3), PORTU is entitled to all reasonable attorneys' fees, expert witness fees, and other costs of the action to be paid by REXEL USA, INC.

WHEREFORE, Plaintiff, MIGUEL A. PORTU, demands judgment against Defendant, REXEL USA, INC., for back pay, employment benefits, other compensation including bonuses,

compensatory damages, liquidated damages, equitable relief including but not limited to reinstatement and/or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

### JURY TRIAL DEMAND

MIGUEL A. PORTU demands trial by jury on all issues so triable.

Dated:  December 26, 2022                    Respectfully submitted,

By:  **KEITH M. STERN**
Keith M. Stern, Esquire
Florida Bar No. 321000
E-mail:  employlaw@keithstern.com
LAW OFFICE OF KEITH M. STERN, P.A.
80 S.W. 8th Street, Suite 2000
Miami, Florida 33130
Telephone:  (305) 901-1379
Fax:  (561) 288-9031
Attorneys for Plaintiff